NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 12 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-10096 |
| Plaintiff-Appellee, | D.C. No. 3:18-cr-00100-HDM-WGC-1 |
| v. | |
| ROBERT LIESSE, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Argued and Submitted October 8, 2021
San Francisco, California

Before: HAWKINS and FRIEDLAND, Circuit Judges, and McSHANE,[**] District Judge.

Robert Liesse was charged with two counts of violating 18 U.S.C. § 875(c) for threatening to kill a Bank of America (BofA) teller over the course of two different phone calls with BofA representatives located in other states. Convicted

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Michael J. McShane, United States District Judge for the District of Oregon, sitting by designation.

of both counts, Liesse now appeals, challenging various aspects of his criminal proceedings ranging from the indictment to trial and sentencing. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, vacate in part, and remand.

First, Liesse contends that the government did not prove required jurisdictional and substantive elements under § 875(c). Liesse argues that this impacted the indictment, jury instructions, and sufficiency of the evidence at trial. We review de novo the district court's decision whether to dismiss an indictment based on an interpretation of a federal statute, *United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017), and the propriety of jury instructions challenged as misstatements of law, *United States v. Perez*, 962 F.3d 420, 439 (9th Cir. 2020). We review the denial of a defendant's motion to acquit de novo, upholding the conviction if viewing the evidence in the light most favorable to the government, any reasonable juror could have found the elements of the crime beyond a reasonable doubt. *Perez*, 962 F.3d at 444.

The jurisdictional element of § 875 requires the threat be transmitted "in interstate or foreign commerce." 18 U.S.C. § 875(c). Liesse argues that the government failed to prove that he knew his communications would cross state lines. But in *Rehaif v. United States*, the Supreme Court broadly considered the requisite mens rea for jurisdictional elements, specifically "in or affecting commerce," and

concluded that "such elements are not subject to the presumption in favor of scienter." 139 S. Ct. 2191, 2196 (2019); *see also United States v. Chang Ru Meng Backman*, 817 F.3d 662, 667 (9th Cir. 2016) ("The longstanding presumption is that the jurisdictional element of a criminal statute has no mens rea."). Liesse's interpretation of the requisite mens rea for § 875(c)'s jurisdictional element is thus contrary to settled precedent, and his challenges on that basis fail. Under § 875(c), the government was required to show only that Liesse transmitted communications across state lines. Given that Liesse in Nevada spoke on the phone with a BofA representative in Texas and, hours later, with two other representatives in Virginia, a reasonable juror could find that his communications crossed state lines.[1]

With respect to the substantive element, Liesse contends that the government failed to prove that he issued "true threats." "True threats" are statements "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). Section 875(c) requires proof that the defendant subjectively intended to issue a "true threat," but it is unsettled whether § 875(c) also requires the government to meet the objective standard: that a reasonable person

---

[1] To the extent Liesse contends that § 875(c) requires the government to prove that he placed the phone calls which transmitted his communications, this argument fails because the plain language of the statute does not support his contention. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992).

who heard the defendant's communications would have interpreted them as "true threats." *See United States v. Sutcliffe*, 505 F.3d 944, 961–62 (9th Cir. 2007) (reaffirming that "specific intent to threaten is an essential element of a § 875(c) conviction" and declining to resolve whether meeting the objective test is also required); *see also United States v. Bachmeier*, 8 F.4th 1059, 1064 n.2 (9th Cir. 2021). Because the district court instructed the jury that § 875(c) requires the government to meet the subjective standard and the objective standard, we will assume without deciding that proof of both is required.[2]

Subjective intent can be shown through the plain language of the defendant's communications, such as by "clear and unambiguous threatening statements" or "explicitly threaten[ing] named individuals with bodily harm," and through the defendant's conduct, such as a defendant's rifle ownership coupled with his statement: "I am now armed," *see Sutcliffe*, 505 F.3d at 959, 961. The objective standard can be met through the reactions of those who experienced the defendant's

---

[2] Contrary to Liesse's argument, the district court did not err in declining to use the phrase "true threat" in its jury instruction because the instruction appropriately distinguished between threatening language that is proscribable under the Constitution and threatening language that is protected under the Constitution. *See Black*, 538 U.S. at 359–60.

communications. *See United States v. Bagdasarian*, 652 F.3d 1113, 1119 (9th Cir. 2011).[3]

A reasonable juror could find that the evidence at trial demonstrated that Liesse's telephonic communications subjectively and objectively constituted "true threats." First, Liesse threatened to kill a BofA teller by name and further stated that he had a gun, would wait for the teller at his branch "every day," and was willing to do jail time. *See Sutcliffe*, 505 F.3d at 961. Second, Liesse reiterated his intention to kill the teller on two separate calls with three different BofA representatives. *See Bachmeier*, 8 F.4th at 1065 (finding reiterated threatening communications indicative of subjective intent). Third, Liesse drove to the teller's branch, brandished a BB gun at the security camera, and left handwritten notes consistent with his statements on the calls. *See Sutcliffe*, 505 F.3d at 959. Finally, based on the content of Liesse's communications, the teller testified that he feared for his safety and local police officers opened an investigation. *See Bagdasarian*, 652 F.3d at 1119. All this evidence was sufficient to support Liesse's conviction.

Second, Liesse challenges the admission of certain "other act" evidence: all his conduct at the bank and the subjective reactions of the BofA employees and police officers who experienced his threats. We review de novo whether evidence

---

[3] The jury heard tape recordings of Liesse's calls and could assess the tone, volume, and tenor of them.

5

is other act evidence within the meaning of Federal Rule of Evidence 404(b), and for abuse of discretion the admission of such evidence. *United States v. Carpenter*, 923 F.3d 1172, 1180–81 (9th Cir. 2019). While other act evidence is inadmissible to prove character, it is admissible to prove, inter alia, intent, preparation, and lack of accident, Fed. R. Evid. 404(b), if it tends to establish a material point, is not too remote in time, is based on sufficient evidence, and, at times, is similar to the offense charged, *Carpenter*, 923 F.3d at 1181–82. But evidence that is "inextricably intertwined" with the underlying offense is exempt from the requirements of Rule 404(b). *Id.* at 1181. Evidence admissible under Rule 404(b) is still subject to the general balancing test concerning whether the evidence's "probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *see Carpenter*, 923 F.3d at 1181–82.

The district court did not abuse its discretion in admitting evidence of Liesse's conduct at the bank. Liesse's initial trip to the bank, about an hour before the first call, was "inextricably intertwined" with his statements regarding the teller on both calls. *See id.* at 1181. Liesse's second trip to the bank, less than an hour after the first call, tended to demonstrate that his subjective intent was to issue "true threats," as his conduct at the bank was consistent with his statements on the calls. *See Sutcliffe*, 505 F.3d at 959. The admission of the homophobic statements in these

notes does not change this result, as such slurs were also probative of Liesse's subjective intent and not unfairly prejudicial.

Nor did the district court err in admitting evidence of the subjective reactions of the BofA employees and police officers. Such evidence is relevant to meeting the objective standard. *See Bagdasarian*, 652 F.3d at 1119; *Fogel v. Collins*, 531 F.3d 824, 832 (9th Cir. 2008).

Third, Liesse claims that the government engaged in misconduct during the grand jury proceedings and at closing argument by testifying to the ultimate issue in this case: whether Liesse issued "true threats." We review de novo allegations of prosecutorial misconduct before the grand jury, *United States v. Fuchs*, 218 F.3d 957, 964 (9th Cir. 2000), and for plain error allegations of prosecutorial misconduct during closing argument that were not raised below, *United States v. Sanchez*, 176 F.3d 1214, 1218 (9th Cir. 1999).

Any error during the grand jury proceedings was "rendered harmless by the verdict," because the alleged errors that Liesse points to on appeal were not structural in nature and were brought to the attention of the district court prior to trial through a motion to dismiss, the motion was denied, and a guilty verdict was returned. *See United States v. Navarro*, 608 F.3d 529, 540 (9th Cir. 2010). During closing argument, the prosecutor did not commit misconduct because his statements amounted to permissible "hard blows based on the evidence and all reasonable

7

inferences from the evidence." *United States v. Hermanek*, 289 F.3d 1076, 1100 (9th Cir. 2002) (quotation marks and citations omitted).

Fourth, Liesse argues that the indictment was constructively amended because the conduct charged in count 2 included only a portion of the second phone call, but the conduct described in the jury instructions and the proof offered at trial involved the entirety of the second phone call. We review for plain error constructive amendment allegations that were not raised below. *United States v. Ward*, 747 F.3d 1184, 1188 (9th Cir. 2014). No plain error occurred. While there may have been a divergence between the allegations in the indictment and the jury instructions or proof offered at trial, any divergence did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings," *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1905 (2018) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1340 (9th Cir. 2016)), particularly because Liesse himself argued that the charged offense in count 2 covered statements made during the entire phone call. In fact, on that basis, Liesse succeeded in getting a third count—a count charging him with the same offense for statements made during the portion of the phone call that is not explicitly alleged in count 2—dismissed as multiplicitous with count 2. Any error also did not impact Liesse's "substantial rights," *id.* at 1904–05, because it is exceedingly unlikely that the jury believed that statements made during the portion

of the phone call alleged in count 2 were insufficient for a conviction, yet statements made in other parts of the same phone call were sufficient.

Fifth, Liesse challenges the substantive reasonableness of his custodial sentence. We review for abuse of discretion the substantive reasonableness of a sentence. *United States v. Autery*, 555 F.3d 864, 869 (9th Cir. 2009). Contrary to Liesse's arguments, the district court adequately considered the factors set forth in 18 U.S.C. § 3553(a) when sentencing him and did not abuse its discretion in selecting the sentence it did. *See United States v. Apodaca*, 641 F.3d 1077, 1082 (9th Cir. 2011).

Finally, Liesse claims that three conditions of his supervised release are unconstitutionally vague or overbroad. Because Liesse claims that these conditions violate the Constitution, we review de novo. *United States v. Gibson*, 998 F.3d 415, 418 (9th Cir. 2021). The twelfth condition, which tracks the standard risk notification provision in United States Sentencing Guidelines Manual § 5D1.3(c)(12), is not unconstitutionally overbroad and vague. *See id.* at 422–23. But we vacate and remand the third special condition, regarding Liesse's permitted contact with banks, so that the district court can clarify and limit the scope of its written judgment consistent with its oral pronouncement, as well as the fourth special condition, prohibiting contact with the teller, so that the district court can

make explicit that only knowing contact is prohibited.[4]  *See United States v. Hernandez*, 795 F.3d 1159, 1169 (9th Cir. 2015).

**AFFIRMED in PART, VACATED in part, and REMANDED.**  Each party shall bear its own costs on appeal.

---

[4] The Government agreed that the fourth condition should be interpreted this way and, when asked at oral argument, had no objection to revising the wording of the condition to make that express.  *See United States v. King*, 608 F. 3d 1122, 1128 (9th Cir. 2010).